v. Appellee, arguing on behalf of Plaintiff McConnell, attorney Ms. Catherine Coles, arguing on behalf of Defendant Appellee, attorney Mr. Paul Glazer. Mr. Glazer? I'd love to start first, Your Honor, this is a state appeal, so I'm sorry, you're right. Old habits die hard. Yes. I figured you were always the appellant. Not today.  Thank you. You may proceed, Ms. Coles. Thank you. Good morning, Your Honors. Catherine Coles, on behalf of the people, counsel, and may it please the Court.   Coles, arguing on behalf of Plaintiff McConnell, attorney Ms. Catherine Coles, arguing on behalf  you review the draft key statements brought forth in the trial in order to reverse the trial court's decision to grant clergy privilege to Mr. Sutter. Mr. Sutter did not qualify as clergy under the statute or under his church. And second, Mr. Sutter extinguished any privilege that may have existed when he discussed the defendant's admission or confession with multiple people, no fewer than eight, to      the court. I stop you right there. Isn't the privilege both to the clergy or the practitioner and the defendant in this case? Pardon? Isn't the privilege both residing in the clergy or the practitioner and the defendant? Yes, it resides in both people if it existed. So the defendant would have to waive it as well, even if the clergy or practitioner waived it, correct? I think, in this case, I think I would disagree because the actions of the clergy person, Mr. Sutter, indicate that the conversation was never meant to be confidential, so that neither of them ever actually held privilege. That's a different issue. Okay. You said it was waived as part of your argument. Is it not true that the defendant would have the right to invoke the privilege or waive it? It doesn't. It's just not up to the practitioner to waive it, is it? So, Your Honor, are you asking if independently the... Yes. Okay. I'm arguing independently that he can, that his actions waive this privilege due to, because he disclosed the... The defendant's actions waived it. The parishioner's by disclosing this. Right. The parishioner. Yes. You're saying he waived it. Extinguished the privilege. But he does have the privilege, correct? You're not disputing that. No, I do believe that they didn't, no privilege actually existed. That's my first point, that even, so my first point is no privilege existed because Mr. Sutter... Well, assuming for the sake of the argument, so we don't get off on tangent. Sure. Assuming for the sake of the argument, forget about the context, it's a privilege by statute that runs to both the clergy practitioner and the party who makes the admission, correct? Yes. Okay. So, if it does apply, he'd have to be a waiver on both sides, correct? The priest can't waive it for the parishioner, can he? If he test... In a hypothetical situation that was different from here, if the priest got up there and tried to test, if testify, and then the defendant said, no, you can't testify because of our privilege, I believe that's maybe the situation. Right, and can't be waived by the priest for the parishioner, correct? Correct, but in this... That's the question, okay. Okay. Let me ask you another question. Are you disputing that the relevant admission attributable to the parishioner was made in the context that it was made for spiritual guidance? You're not disputing that fact, correct? Aside from the waiver issue. No, I am disputing that fact. You are disputing that fact? That's my first point, that Mr. Sutter was not clergy, that this conversation was akin to two parishioners talking to each other, disclosing each other's sins, but it was not in the context of spiritual guidance because Mr. Sutter was not designated by the church to be a spiritual counselor. He was not designated by the church to be a pastor. He was not appointed by the church in any official... What was he doing doing this? Was he doing this without the church's knowledge or consent? The testimony didn't establish that below, and it is actually the defendant's burden to establish the privilege. He does argue on page 14 of his brief that it's the people's burden to establish the privilege. However, it's the person who is asserting the privilege to establish that the privilege actually existed, and that's... Well, what did the trial court find? The trial court found the opposite of what you're saying, right? The trial court found that the privilege existed. Right. And that it was that this conversation was basically authorized by the church elders, that Sutter was authorized to lead a group for the spiritual guidance of the parishioners, correct? The trial court found... Yes, the trial court found, however, this is contrary to the evidence that was presented because Mr. Sutter was just a member, an active member of the church. He did not have any official training, and this was not something that the statute contemplated as granting the privilege of someone like a parishioner to parishioner. That's an interesting question because I would agree with you where it says if the statute said a clergyman of any religious denomination, which would imply the person would have to be ordained or would have to go through a prescribed course of religious training, this case is going to turn on the construction, our construction, of the word or practitioner because the statute, as you know, is an alternative. Right. It does not simply say a clergyman. It says a practitioner. So what are we to make of the term practitioner? Sure, but if you read the statute, when you look at the statute, the statute allows for a person to assert the privilege where the rules of their religion prevent them from making, enjoin them from testifying to the person's confession. And here, Mr. Sutter's actions would suggest that he wasn't enjoined by the religion at all since he disclosed his confession to multiple people, no fewer than eight. He disclosed it to people outside... Well, that's a separate issue, is it not? You're confusing practitioner with whether he weighs it. My question is... No, I... Answer my question. Sure. Tell us why Sutter is not a practitioner. Forget about the context. Is he a practitioner or not? Mr. Sutter would be a practitioner at the church. Right. Yeah. So would the defendant. They're both practitioners at the church. However, given the context of this statement that they made to each other and given the with multiple other people, this would indicate this is not something that was meant to be subject to clergy or practitioner privilege because... Privilege is meant to be confidential. He disclosed it to eight other people. You use that as evidence to show that he, the practitioner, excuse me, he, Mr. Sutter, never intended this to be a privilege conversation. So in his view, he was not acting in his official capacity. Is that your position? That is my position. And additionally, People v. Dierks also supports this. Now, Dierks was decided on a different ground because the confession was made in the presence of a third party. That didn't happen here. But Dierks discussed the fact that the confession in that case was never meant to be confidential or subject to privilege because... What did Sutter say about whether or not he was attempting to discuss this outside of the bounds of the church's spiritual guidance system? Did he indicate that he thought that he was discussing this with people where the privilege would be waived? He didn't say that, did he? Mr. Sutter's testimony suggests that he didn't think that Detective Hoffman would then disclose it to the police or go on and they discussed... Wasn't Hoffman in this group, though, when they were discussing this issue? Well, what happened... Yes, Mr. Hoffman was in the group. I think the initial disclosure was between the defendant and Mr. Sutter. Then Mr. Sutter went to his small group and discussed the disclosure. Then he went to the pastor and discussed the disclosure. Then he went to the assistant pastor and discussed the disclosure. And then he went to another person, a counselor at a rehab center, and discussed the disclosure. I think it would be reasonable if Mr. Sutter was being trained as a pastor or as a spiritual guidance that he would discuss it with the pastor to have some guidance on what to do now with the confession or the admission. So you're saying, again, that the actions of Sutter waived the privilege on behalf of the parishioner? Without admitting it, that's what you're saying? That's what I'm saying. Additionally, I am saying that there was never any privilege because the conversation was never confidential. And in order to have privilege, you need to have a confidential conversation. Well, why wasn't it confidential initially? Because Mr. Sutter never had an intent to keep it confidential. And that's clear by his actions. And there was no meeting of the minds on the confession. I don't know. It has to be. Let's say somebody goes into a church confessional and confesses to a priest in the church confessional. According to you, if the priest goes around and starts discussing with other people in the church, picnics, whatever, then the privilege is waived. Because the actions would indicate the priest never intended to keep it confidential. Is that what you're telling us? I think that's distinguishable because the actions of going to a confessional and having that be a private conversation are easily identifiable as something that's meant to be confidential. Does the statute say it has to be a private conversation in the course of spiritual guidance? So what if there's a bunch of other church elders there? You're saying the privilege wouldn't apply because other people are there during the course of this religious discussion in the church? I think that, in that circumstance, you're looking at people being jerks because there was an additional person present there who happened to be maybe an assistant pastor, and they said the privilege did not apply because the third person extinguished any privilege because there was no confidence. Okay, let's go back to whether or not he was a practitioner, okay? Are you saying he wasn't a practitioner because of what he did after that, that the church elders didn't authorize him to counsel people for spiritual guidance? Tell us succinctly why you're saying that Sutter was not a practitioner within the meaning of the statute. I'm saying that while he was a practitioner, within the meaning of the statute, there was nothing established that his role as a practitioner prevented him or enjoined him from disclosing the defendant's confession because he didn't explain how his religion prevented him from disclosing it since he talked to multiple people about the defendant's admission. So the case turns on the actions done of the person to whom the admission is made, again, according to what you're saying. Yes, and people being jerks supports this because, in that case, the court discussed how the pastor had disclosed the confession to multiple people, and this was indicative that there was no level of confidentiality and that it was not ever meant to be a confidential conversation. While the defendant may have had that impression, the actions of the pastor indicated otherwise. You're saying we're reading in something in Sutter's actions. Sutter never testified that he thought he was waiving the privilege, did he? No, Sutter did not testify to that. Did the trial court make any findings on whether or not Sutter believed that he was waiving the privilege? Not that I recall, Your Honors, but I'd have to read it. Let me ask you this. Yes. Let's assume for the sake of argument that Mr. Sutter is a practitioner under the statute. Sure. Is every conversation that he has with an individual confidential? No, I wouldn't think so. Then what distinguishes a confidential conversation with against one that is not confidential and would not be protected by privilege? Well, in this case, particularly, we wouldn't be here had this conversation actually been confidential because we wouldn't have known about the statement. Because of Mr. Sutter's actions, we know about the statement because he disclosed it to multiple people who then disclosed it to the police. That's not my question. Oh, I'm sorry. Mr. Sutter is a practitioner under the statute, and he has a conversation, let's take the extreme, with the housekeeper about how he wants his shirts pressed. And on the other extreme, he has a very cloistered and a confessional conversation with someone about whatever. Where in between is the line for privilege? I mean, obviously talking to the housekeeper is not a privilege. It was never intended to be covered under the statute. And the other extreme is. So my question to you is, when does it become privilege? What are the circumstances? I think it would be a harder case if Mr. Sutter had not disclosed this to multiple people. I think the distinction would be based on. Would you agree that the privilege arises, and then I will let you answer the question. I don't mean to keep cutting you off. But it's either privileged at the time it's spoken or it's not. It was either intended to be confidential at the time the conversation took place or it's not. Right. And I'm saying at the time. And so I'm asking you, what are the circumstances to determine that? Because I changed my mind later and disclosed it, doesn't go back and change my intent at the time. Sure. And at the intent of Mr. Sutter, I mean, we can't know what his intent was at the time because we don't know. But I'm saying based on his actions, we do know his intent since he disclosed it to multiple people and it was meant to be discussed. So you're telling me you don't think there's any particular criteria or factors that you should look at besides subsequent disclosure that would make something privileged or not privileged? Well, I think you can look at whether it was done in a confessional, who the person was, and what their role is in the church. Wait a minute, but we've already established, I asked you to assume for the sake of argument, he is a practitioner. Sure. Tell me about the conversation. When is it privileged? When is it not? Well, so in this case, they were accountability partners. They confessed to each other. But again, given the actions, I think you look at the actions surrounding the circumstances, where the confession was made, outside the church, inside the church, when it was made, and the actions afterwards. And here it is an easy, cut and dry case in mind due to his multiple disclosures. Well, the statute says here, does it not, that the clergyman or practitioner cannot be compelled to disclose the confidential communication made to him or her in his professional character or as a spiritual advisor. Correct. We're saying that Sutter was not a spiritual advisor? No, Mr. Sutter was not a spiritual advisor. What was he doing leading a Bible study group? How would you analyze that context? That's not connected to spiritual guidance or religion in a Bible study group? Sure, but he was an active member of the church. He was very active and involved, but he was not given any particular training. And had he been given training, then perhaps he would not have disclosed the statement. I think you're reading things into the statute that are not. I appreciate Justice George's question, too, but it talks in terms of what the nature of the communication is and whether the person is a practitioner. I don't know that we can decide the whole privilege terms on whether or not he's in a confessional or standing outside the church. I see your point, but I don't think it even applies here because I think he was making these statements while he was being counseled spiritually by the Sutter. Do you have any other questions? No. Anne? I have one or two. Okay. Was there any testimony that was controverted? I don't believe so. Your argument says on the standard of review, page 4 of the brief, the question on appeal involves the interpretation of the clergy privilege statute. Statutory interpretation is to be reviewed de novo. Your entire argument has nothing to do with the interpretation of the statute, as I can see. Your arguments have to do with things that are fact-specific, which means that I think your standard of review is inappropriate. So let's discuss what the standard of review might be based upon a factual difference of opinion. Is this a mixed question of law and fact? That is, whether or not this particular individual falls within the statutory interpretation of whether or not he is a participant or a practitioner or a priest, and whether or not the defendant, Mr. Thodos, is a penitent? This would be a silent note. Any facts would be viewed as a piece of discussion. If this is, in fact, a mixed question of law and fact, then the standard of review would be whether or not the trial court's interpretation of the factual scenario as applied by the statute is manifestly erroneous. Would you agree with that? Yes. Okay. I have no further questions. Anybody have any other questions? Thank you. You may sit down. You'll have an opportunity to make rebuttal later on. Thank you. Mr. Glazier. Good morning, Your Honor. Counsel, may it please the Court. What do you think the standard of review is? Well, I know in the brief we did say that the application of an interpretation of statute is de novo. However, if you read the Dirks case that the State relies on quite heavily, it says that the application of the filing of a trial court regarding the privilege should not be disturbed unless it's contrary to the manifest way to the evidence that's in the statute. It's at page 1078 of 11. That means that we have to find an opposite conclusion to that of the trial court. Correct. To reverse, right? Correct, correct. Now, if this case involved a statement by a parishioner of a Catholic church saying something to someone who happened to sit next to him at the pews on Sunday, the case would be different. If this was a case where a member of a Jewish synagogue makes a statement to the person who volunteers to run the choir and the high holiday services, this case would be different. But not every house of worship or religious body is like a Catholic church or a Jewish synagogue. Today's religious practices are quite different from what the State tries to describe and tries to invite this Court to find. Illinois, we call it clergy penitent privilege. It's set forth in 803 of the statute. And the Circuit Court's order below recognizes its respect for diversity in religious practices today. While the Arizona law, or unlike the Arizona law as discussed in the Waters v. O'Connor case cited by the State in their reply, the Illinois statute does not limit the privilege to clergymen or priests acting in their professional character. 803 specifically applies to confessions and admissions made to clergymen or practitioners acting in their professional character or as spiritual advisor. Based on the evidence below, which the State doesn't really want to talk about much, Mr. Sutter or Suter fell within 803's description of a practitioner and spiritual advisor. And his account of the admissions made by my client, Christopher Thonos, were properly barred. Let's review how 803 specifically applies here. Under the facts as testified below, Sutter was a practitioner of religious denomination. He was formally recognized by his church elders who organized the church, who ran the church, who were the elders. They were the head of the church as one of eight small group leaders. That's what they called it. They didn't call them priests. They called them small group leaders. This Court can't invade how they define that. That would violate the First and the Fourteenth Amendment. To become this small group leader, he had been discipled, he explained, since early in his Christian life. He attended a church history class at an accredited divinity school. He regularly consulted with the pastor and other clergy at the church. And he had it conformed to written rules. This is not just an informal, I'm just another member kind of thing. He was selected by the elders to take this position. He also served as Mr. Thonos' spiritual advisor. He personally baptized Mr. Thonos with the church's approval. He gave Thonos financial assistance to attend religious retreats and programs. In fact, I believe his testimony can be read that he actually was paying, had paid for Chris to attend this retreat that Chris called him from at that time, made the statements. He discipled Christopher, routinely taking confessions from him, and at times rebuking him as he thought it was necessary. And most importantly, as he says at page 34, he called himself Chris' spiritual advisor. At page 46, he said, I was, and this is quoted in a brief at page 9, it was intended to be, the conversation we're talking about, it was intended to be of a confidential nature, and this is my interpretation. By the way, I completely blew it in the case. So Sutter wasn't the best practitioner in terms of keeping things confidential. But at the time the statement was made, Christopher intended his statement to be heard by Sutter and Sutter alone. So in response to her argument, would it be your position that what the practitioner does later, whether or not he repeats it to other people, doesn't waive the privilege? Doesn't matter. No, because the privilege applies not just to the practitioner, but it applies to the person who's making the statement. It's a two-way privilege. But here it's your client who's urging the privilege. So should we view this as to whether or not your client believed it was confidential at the time he made it? Actually, I think both are urging it to be a privilege. Right, but it doesn't matter. Respectfully, it really doesn't matter whether he thinks it's privileged or not. He gets up on the stand and says whatever. It is your client's prerogative to invoke that privilege, to keep it out. So my question is, but I guess it would be to Mr. Studer too, but for purposes of our argument, the defendant, is the question whether or not the defendant believed it to be a confidential statement at the time he made it? Yes, and there's no evidence below this record that shows that it wasn't intended to be confidential. He made the statement to Mr. Sutter over the phone while at this religious retreat. The State could have called someone who was in the room at the time that my client made the phone call. We don't know if there was anyone else in the room at the time he made the phone call. The State has the obligation to present some evidence here, and the evidence that we have fully establishes that this statement was intended to be confidential to a spiritual advisor at the time it was made. If the spiritual advisor decided to go ahead and take out an ad out in the local paper saying revealing what was said doesn't matter. Well, he's talking to him at a recovery religious retreat on the phone. Typically, the penitent doesn't say, by the way, I want you to keep this confidential in conformity with the statute, does he? He just says it. No, I don't think people go to a Catholic confessional and say, Father, is this going to be confidential or what? They expect it to be confidential. And again, this shows the Church here was not… I think the difference is it's the accoutrements that go with stepping into a confessional at St. Mary's that virtually screams this is confidential. And so that's what I'm driving at here. What are the circumstances from which we derive this belief? And I guess my question, too, is, is it – it's in the eyes of the defendant, his subjective, is this a reasonable man's standard, or is it an objective standard as to what is intended to be confidential? That's a long question. Let me put it in order. Whether this is a confession booth or not, that's why the privilege in Illinois, at least, recognizes there's a difference between churches. Some churches have the booth, some don't. These days, there are a thousand drive-thrus, there are dozens, hundreds of churches, all with their own theology. In fact, in the American Baptist movement, the American Baptists see their home churches as being entirely autonomous. They don't have a higher structure that controls them. But isn't there something that would indicate to me in a pick of religion that I'm talking to you and we're just shooting breeze, versus I'm making a statement to you or I'm talking to you as my spiritual advisor? What we know from the record here, Mr. Sutter was Christopher's spiritual advisor. He was the person to whom Chris would regularly make confession and reveal things that were of an intense spiritual nature to. And whether he did it in a confessional or over a phone like this, he's making it to a person he trusts in a spiritual capacity. Can we look at the content of the statement then to determine whether or not it was intended to be? What if he says, you know, I want to meet you for dinner Friday and let's go have pizza? Is that confidential? So where do we draw the line? This court in the Campobello case, and there are a lot of distinguishing facts in Campobello, but it's a good discussion of the privilege and what AL3 means. It said, any information communicated in the course of an admission or confession made for the purpose of receiving spiritual consultation or counseling is privileged. So obviously this applies to either a clergyman or a practitioner. What my client said to Sutter was intended to be of a spiritual nature, some spiritual counseling. It was intended to be confidential for all we know. And we can assume, well, maybe it wasn't. Well, then the record means nothing anymore. The record shows the state had an opportunity to present it as a refute. Sutter's statements are completely irrefuted on this record, that he was a spiritual advisor, and he took this statement from my client in a confidential nature. It happened to be over the phone, but it was confidential nonetheless. But he wasn't calling from the local bar, was he? He was calling from a religious retreat, wasn't he, if I read this correctly? Your Honor, I don't think it would matter where he called from, but the fact that it's a religious retreat shows that it certainly supports the thinking that he needs some spiritual guidance at that time. And the fact that Sutter did share it with other people, again, it wasn't good that Sutter, I wish Sutter had kept it quiet, but he didn't. But the fact remains also that his revelation of the statement was made to other members of the church. He didn't go to the press. He didn't say anything like that. He talked to his pastor. He talked to the counselor at this religious retreat. And, in fact, he talked to Hoffman. He said he thought it was going to be in a confidential matter, and Hoffman kind of didn't sandbag him, but Hoffman testified, well, I told him I'm a confidence, you know, he's going to have to testify about it. His revelations were all made to other church people in the spirit of a spiritualist. And so that's what makes you, that's what you hang your hat on when you say this statement was confidential? What I'm hanging my hat on is Mr. Sutter's testimony was intended to be of a confidential nature. You can't get any clearer than that. Okay. All right. Your Honor, I think the evidence in this case more than adequately supports the judge's ruling below, and for that reason we ask that you affirm the decision suppressing the, or employing the privilege against the statements here. Do you think we have to draw a line somewhere? Where? Well, you were asked questions about where in the graph do you fall, and where is the y-axis that determines whether or not it is or it is not privilege. I think this falls off our lines as it is privilege because of him being a practitioner as defined by that church, and it was intended to be confidential by virtue of the nature in which the statement was made. I don't think this, the only difference about this case is that we have a practitioner here as opposed to an ordained minister, ordained clergy person, but that doesn't matter under our law. Under the facts here, Mr. Sutter was a bona fide, accredited practitioner by the elders of his church, and to say that he doesn't qualify, then we have ecclesiastical and exception, exemption problems, if you say that doesn't count because he's not really a practitioner. Your Honors can't, in all respect, say what the church could, can, and can't do, but under the facts here, we have a practitioner who's acting in the course of his being a practitioner when he received the statement. Thank you. Ms. Coles. Thank you, Your Honors. The people asked this court to reverse mainly because the lack of confidentiality, and due to the lack of confidentiality, there could be no privilege, and that's a, the privilege requires confidentiality, and that's discussed in Cambello. It's also discussed in Dierks, and as a result of Mr. Sutter's actions, there was no privilege, and this indicates the conversation also was never meant to be privileged. The defendant, in his arguments, stated that the state had an obligation to present evidence. This is not true. The state, it was the defendant's burden to present and prove that the privilege existed and that the confidentiality existed, and that's under Thomas, paragraph 94, and also under Dierks at 1077. And the defendant talks about how the only people he disclosed it to were other members of the church. You mean Mr. Sutter? Yes, I'm sorry. Mr. Sutter disclosed it only to other members of the church. However, this doesn't matter, the fact that he, because he disclosed it to other people. It doesn't matter whether they're members of the church or not, and Detective Hoffman said there was some level of confidentiality with the small group, but he didn't say it was completely confidential. And he also disclosed it to someone at a rehab center, so it wasn't just members at the church. And that's why we request this court to reverse the trial court's finding that. . . Let me ask you this. How do we get around manifest weight if that is, in fact, the standard of review? Because of a pretty stringent burden. Because the evidence demonstrates that the statement was unconfidential and the court abuses this or was against the manifest weight of the evidence. Is it enough that Mr. Sutter says, you know, I declined to testify because what you're asking me to testify about was a confidential statement? Is that enough? On its own, enough? No, I don't think so. And that's sort of where the first. . . How does he establish that it was confidential by the surrounding facts and circumstances and that it wasn't established here because, again, it wasn't a conversation that was kept private and it wasn't a conversation perhaps the defendant, like I said, thought it was going to be confidential. Is it in his eyes? Is it objective? Is it a reasonable man's standard? I think when you look at people v. Dirks, when they discuss the intent of the statement, they look at it as an objective view. Like, due to the actions of the pastor in that case, they said, well, he was telling a bunch of people so objectively, it seems that that statement was never meant to be confidential. In whose eyes? That's what I'm getting hung up on. You seem to be looking at everything from the pastor's standpoint. Wasn't the intent of the communication by the parishioner count? According to you, the privilege simply stands or falls on the basis of what the clergy does. Well, the statute is designed for the clergy. It's designed for the practitioner as well, but it's designed for spiritual guidance. And if there's no spiritual guidance on the practitioner, the spiritual guidance side, then I don't see how it could be qualified as privilege. According to Mr. Glaser, Sutter testified he thought it was confidential. It was intended for spiritual guidance. He can't contradict the record at this point. Well, I think that testimony is contradicted by his actions. Okay. In any venue, we can see. I'm sorry. Go ahead. I mean, isn't it the trier of fact who's supposed to resolve these contradictions? I said this, but my actions say this. That's what trial judges do every day. Sure. And I think because when you look at the case law, it's contrary to the case law. Okay. Yeah. And I thank you, Your Honors, for your time. If there's no further questions. Thank you. There will be a short recess. We have other cases on the call.